May it please the court, good morning. My name is Kevin Hughes. I represent plaintiff-appellant Gladwell Governmental Services, Inc. For the court's information, my client Diane Gladwell is present here today. I would like to highlight four points this morning. First, that the rights to the pre-existing materials initially vest with the author, which in this case was indisputably Gladwell, and were never transferred to Marin. The second point I want to hit upon is that this contract provision does transfer some rights to Marin, but it retains important copyright rights to Gladwell. Thirdly, the parties did not intend for Marin to assume all rights exclusively. And finally, fundamental fairness requires reversal of the lower court's dismissal of Gladwell's complaint. Counsel, can you help me with the language of section 11? It seems to me that the whole case turns on the district court's reading of that language and our review of the court's interpretation. You said that your third point was that basically that not all rights had been transferred and that some had been reserved, but I don't see any reservation language. To put the question as plainly as I know how to put it, it looks to me as I read the language of that agreement that your client assigned whatever rights she now claims that she reserved in the language of paragraph 11, and that is dispositive of the case. Can you help me with this? I can, Judge Tallman. Now, the actual language in the record is at page 43, at section 11, just so we're all clear. The first point I'd like to make is that this contract provision refers only to work product under the agreement. There is no mention of work product prior to the agreement. Where does it say that in number 11? Where does it say that? Yeah. It refers to all reports, information, data, work product, et cetera, which have been furnished to or collected, prepared, assembled, and or made by the contractor under this agreement. There's no reference to any work product made prior to this agreement, which, of course, is what the preexisting materials are. But the problem is that she's basically making the claim that the work product that she turned over to the county cannot be republished to the county of Tuolumne or put on the Secretary of State's website when there's no dispute that what she turned over to the county is what ended up on the website. So back to my original question, what is it that she reserved and how did the county breach this provision of the contract if they simply took the work product and gave it to others? The work product they took had a copyright in the preexisting materials that was retained by my client. But the problem is that the contract doesn't say anything about preexisting materials. As I read it, what it says is the work product, which is transferred to the county, is theirs. They have the ownership of it. They then publish it. And I assume that the parties intended it was going to be available to the public at large, and I assume we can assume that that included putting on some kind of a website or maybe posting it publicly. How did the county breach its obligation to your client? We cannot assume that this work product would be available to the public at large. That's not the intent. With a record retention schedule, this is purely to be used internally. How do you explain the language in 11 that talks about and shall not be made available by the contractor to any other person or entity or published by the contractor without the prior written authorization of the county? That seems to suggest to me that it's the county who gets to decide whether or not it's published. Gladwell cannot and would not want to publish this material. Publish, the word publish under the Copyright Act, has a specific definition to sell or otherwise transfer ownership to another person. Gladwell would have no interest in publishing this material to any other person. But if the ownership of this work product was transferred to the county under this clause, and it is the owner of the work product, by definition, doesn't it have the right to do whatever it wants to do with the property that it owns? With all due respect, Your Honor, no. Each copyright right can be transferred and owned and held separately.  But the problem I'm having with your argument is there's no language in paragraph 11 that purports to reserve to your client something that is, I guess you say, contained within the work product that was turned over to the county, which was a preexisting material that she reserved the copyright in. Obviously, if you'd said that in the language, we wouldn't be here. But you didn't say that, and I'm having a hard time understanding why you aren't bound by the agreement and the right that you relinquished. Your Honor, two things. One, the presumption goes the other way. It's not that the copyright holder needs to reserve rights. It's that no right is transferred unless, under this Court's opinion in effects associates, which sets out the policy underlying section 204A of the Copyright Act, no right, no copyright, none of that bundle of rights is transferred unless there is a clear, reasonably certain writing to that effect. Let me come at it a different way. If we were to decide that the language of paragraph 11 is clear and unambiguous and amounted to a transfer of whatever interest she had when she turned over the work product, then you lose, right? Hypothetically, but I can establish that that is not correct, that it's not a clear transfer. And I wanted to come back to another point you had just made. Under section 103B of the Copyright Act, if you acquire ownership of a derivative work or a compilation, it's casebook law that you don't acquire ownership of the preexisting materials unless there's a separate writing specifically on that point. So acquiring, this is effectively both a compilation and a derivative work. Acquiring this compilation, as Marin does, does not entitle it to ownership of preexisting materials unless there's a specific agreement on that point. The burden is on Marin to show a specific agreement transferring preexisting materials. Otherwise, all they get is the compilation. I'd be with you in your argument if the definition of work product in paragraph 11 wasn't so broad. It's a very, very broad definition. It includes all reports, information, data, work product findings, conclusions, furnished to or collected, prepared, assembled, and or made. I mean, that covers compilations. It covers a variety of forms that are all subsumed within the definition of work product. It's broad, but it's not, it doesn't talk about the intellectual property rights in the work product. There is no precedent that allows for a transfer of intellectual property rights in work product with language that just talks about the work product itself. If there's no underlying copyright, then paragraph 11 ends the discussion probably, right? No, Your Honor, because the parties, and one disadvantage that Gladwell is at, is that we haven't been allowed in discovery to talk about the intent of the parties, to talk about what. Okay. Leaving aside intent, because I realize it's 12B6 dismissal, but if the evidence came in that the parties intended for this to transfer the work, if you had no underlying copyright, that probably ends the discussion. If there was no underlying copyright to the preexisting materials, then the discussion would shift to whether any of the current materials are of a copyrightable nature, and then I would say that if there are contributions that are of an original copyrightable nature, Ms. Gladwell and plaintiff would own the right to make derivative works of that. It's hard for me to tell on the basis of this limited record what the preexisting work is. Can you point to something that would help me? Or at least describe, point to something that's in the record, and then maybe you can explain it for me. In the complaint, we know that the preexisting materials were original expressions and phrases and selection and arrangement of data. A typical copyrightable nature of a compilation. So it's choices made as to how to express and arrange and select the data that's presented. And if I could go a little further. Contract terms, are we talking about some boilerplate language in a contract that one might use as a form besides that? To take a really quick example. Say this is a record retention schedule, 300 pages. One of the dozens of things that Gladwell did was they provided on the backside of each page an instruction manual that told you how to use the front side, and they put it upside down, so that when you have a worker who's in a certain department in Marin County, and they ever have a question as to what's going on in the front and some of the abbreviations used, they just turn it over and they look at it, and there it is. Now, that is just one of a dozen examples I could give that unfortunately we haven't provided on the record. Compilation copyright is by its nature, all that's required is some originality. And all that will then be provided, the protection you get, is the copyright in those sorts of choices. Now, because of this. Is it true? Let me just interrupt. I gather on the face of the record we have now, we really don't know with any specificity in what parts of the document you claim preexisting right and which ones you don't. Is that true? That's true, Your Honor. Okay. It does make it hard to evaluate this on a 12B6. It puts my client at a serious disadvantage. I mean, I could make a much better case. And one point we could say is what kind of choices are collected or assembled under this agreement? It doesn't make any sense in English, and certainly if you construe the facts in the complaint in the light most favorable to the plaintiff, to say that a choice made with respect to selecting data was collected under the agreement or was assembled under the agreement. And because you can't say that, the preexisting materials don't fall within Section 11, even though it's broad. It's not tailored to this issue. I'm still struggling, though, with the language of the first clause of paragraph 11, which seems to relinquish whatever interest she may have, because it talks about data. It talks about assembling. It talks about collecting. All the things that you say she did that is preexisting material is subsumed within the definition of work product to which ownership is transferred to the county. The kind of esoteric choices that are made with respect to selecting data, that originality is really the crux of what's copyright protected in her preexisting materials, and you can't point to one of these words that would bring in that type of material in here. Well, I gather your position is if you're going to transfer copyright, you've got to say so. That's my circuit's position. That is the law of this circuit. They would never ---- From a practical standpoint, this is not a registered copyright, correct? I'm sorry? A registered copyright with the Copyright Office. Well, Your Honor, it has been ---- it's a little outside of the record, but there's been a registration for the copyright in the preexisting materials. Yes, there has, and it's held by Gladwell. And you say that's not in the record? Well, it's implied in the record because in one paragraph of the complaint, which is, of course, all we can look at, it says that Diane Gladwell assigned the copyright in the preexisting materials to Gladwell Governmental Services, the plaintiff. If I had an opportunity to provide evidence in this case, there is an actual registered copyright that she holds in the preexisting materials. That's important to me from this standpoint, that if there is no registered copyright, then it would be very difficult to transfer anything to the county in saying that, well, there might be this thing that would be copyrightable or that and so forth. If it is an actual registered copyright, then it would seem to me that that's something that has to be taken care of with a particular assignment like you say, whereas this section 11 is a general transfer, but doesn't reserve anything about the original copyright, which it should have from your standpoint, but yeah. So I think notification of something that is copyrighted would be an important thing. And that's not clear in the complaint. Your Honor, can I point to one other point in the record that speaks to this? At paragraph 14 of the complaint, it is alleged that each version, each footer, each page of these 300-page documents contains a denotation of authorship in Diane Gladwell's name. The parties knew that she was the author. They knew that she had authorship. They intended for her to retain authorship beyond this agreement because each of the versions, each of the footers, every single page said she had authorship. And if I could just cap this. Every single page of the particular work product, they're prepared for the county, right? Yes. Yes, Your Honor. And finally, every case authority and NMR on copyright say that if you're going to transfer copyright, you have to refer in some way to the domain of copyright. You have to reference intangible rights in some way. It's never enough to talk about transferring a material object. You can sell me a book, but that doesn't mean I have the rights to make that into a movie, unless you've made that clear in the contract. There is literally no precedent for just assuming that if work product is conveyed, the intellectual property rights in the work product is also conveyed. So using the phrase shall be the property of the county, your argument is that's not enough. That's not enough. The property has to be separately defined to include intellectual property. That's one way. You could say all rights to the property and sole use or publication for any purpose, all the kind of language that all the other cases include when courts decide that these rights are transferred. But don't we read that in connection with the later phrase in paragraph 11 that talks about the county having the right to determine whether or not the contractor can publish? You do. And if they meant all rights in the first phrase, the second phrase would be redundant. They didn't mean all rights in the first phrase. And the second phrase, they're telling you that one of the sticks in that bundle is being transferred and that's it. You have about two and a half minutes left. Do you want to reserve some for your bonus? I will. Good morning, and may it please the Court. I'm Kerry Adams of the law firm of Murphy Austin Adams Schoenfeld here on behalf of the counties of Marin and Tuolumne. I believe that in your questions you've identified the two issues here. First, whether paragraph 11 is sufficient to create a work-for-hire. And second, what is the consequence of that, assuming that it does, for the allegations about preexisting material? And I, too, want to start with the language of the paragraph 11, and I encourage you to look at the excerpt at page 43 rather than the quotation of it by the Court in the order below, since there were some errors. But Judge Tallman parsed it for me. There are three parts to it. The definition of work product up front, which is very extensive, very broad, and I don't think there can be any question that the Marin records retention schedule is work product under this agreement. And the second phrase, shall be the property of the county, is unqualified. It's a simple, direct, unqualified statement. And by itself, it might be sufficient to transfer all of the copyrights, but we don't need to answer that question here because the third part of the paragraph 11, this one sentence, specifies things that are encompassed in that property. And I agree with Mr. Hughes that it does specify certain things, but I disagree with him that it somehow carves out preexisting material. Do you think as a matter of law that preexisting material can be the subject of a work for hire agreement? I mean, the theory of work for hire is that you commission a work, the work is produced. I mean, probably the typical example would be a piece of art or something like that. But if you have preexisting material and it becomes part of a compilation, can the preexisting material under copyright law be subject to the work for hire provisions? I think the answer to that question, Your Honor, requires reading together sections 201B and section 103B because it speaks to compilations and works made for hire. And while Mr. Hughes stresses section 204, which requires a written transfer of copyright, that has to be read in the context of section 201B, which is quoted at page 10 of the appellee's brief. In a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and unless parties have expressly agreed otherwise, any written instrument signed by them owns all of the rights comprised in the copyright. So if an author brings a previously copyrighted material to a work for hire project, the question is, can that retain its separate copyright status despite this work for hire provision? And I think not unless it's stated explicitly in the agreement as required by section 201B. In section 103B, which was submitted, called to the Court's attention in our supplemental letters, the contractor characterizes that as separating the work that is done in the compilation from the preexisting materials. While the language of 103B, and I think this answers your question directly, Judge Thomas, the copyright in a compilation or derivative work extends only to the material contributed by the author of such work. And that's in the supplemental authorities. Contributed by the author of such work. So I think if they help you. Pardon me? Why does that help you? Well, if the copyright is held by the person who's hired work for hire, the author, then that work is being contributed. It can't be denied that whatever Gladwell had before was contributed to this compilation. Section 103B says that the copyright extends only so far as that which is contributed by the author. Now, if there's somebody else's copyright that does not belong to the author, then, yes, it would retain its separate copyright status in the compilation, and the author, the hirer, would need the authority of that prior author, the holder of that prior copyright, in order to publish it in the compilation. But here we're talking exclusively about material that had been contributed by the author, and that's the language of Section 103B, and I think has to be read together with 201B to qualify 204A as spelling out how we deal with precisely this situation. So I gather your interpretation of Section 101, the definition of compilation in combination with the statutes, would be that if the author can't retain a partial ownership in a preexisting work if you're contributing it, if the author is contributing the whole work, that's your position? If there's only one author, the author can't segregate preexisting from the eventual work that's compiled? Well, she could if she did it expressly in writing, signed by the parties as required by 103B. So it would be a simple matter for her to have reserved the copyright in these particular matters. I say that assuming that they are distinguishable as such. But in another situation, if an author of short stories compiles a collection of short stories and has written three of them herself and had previously copyrighted a fourth one herself and put them into the collection that she does in a work for hire, the one that she had copyrighted before, I think she forfeits her copyright in it. If she does not reserve the copyright to that expressly. What's your best case on that? Pardon me? What's your best case on that point? Well, I think the best case here is the Dumas case. I did not cite it in my brief, but the Ninth Circuit very clearly determined that in the Ninth Circuit, under the 76 Copyright Act, we follow the literal test for work for hire. And under that literal test, we need to read the statutes that Congress passed in 1976, these definitions of work for hire and the restriction of when a work for hire can apply to a non-employee. And in this case, the only real issue, since it is a compilation, since it is an independent contractor, is whether Section 11 is an express agreement in a written instrument signed by them that the work shall be considered a work made for hiring. I don't think the notion that you have to use the phrase work for hire carries any weight, not even in the Second Circuit, where in the Logicom case cited by the lower court, even the Southern District does not require recitation of that phrase in a case very similar to this one. I am so determined that we have a situation where we don't know from the complaint whether there was a registered copyright or not. If there were, it seems to me it would be a whole different matter, because that would put on public notice the fact that there is copyrighted matter and that it is preexisting, and that the burden of proof then is to show that it wasn't transferred as part of Section 11. So how do we uphold a 12B6 dismissal when we don't know that? Well, Mr. Hughes neglected to mention that that registration occurred after the complaint was filed, many, many years after this contract was signed and the work done, and it did relate to a document that was allegedly prepared earlier. But there certainly was no prior notice to any of the parties involved in the development of the contract. Do we know that from the record? No, Your Honor, we do not. We don't know that a registration exists except by Mr. Hughes' reference to it this morning. It didn't exist. We don't know either way. We don't know from the record, but I think the question, even if it had been filed early on, I think even then the literal meaning of Sections 103B, 201B, and Paragraph 11 would make it incumbent upon the author to call attention to the fact that there is copyrighted material that I pre-own that I'm going to put in here, but I'm not going to transfer you my copyright in that material. I think that's what Section 103, 201B says. It all belongs to the hirer unless the parties have expressly agreed otherwise. So even if it had existed before, Your Honor, it would have been transferred away by Paragraph 11. I think that's the odd part, though. I mean, in terms of copyright law, and that's why the record may be insufficient, is that you may have an interesting point on work for hire by the same author, but I find it hard to believe that you can take, in the abstract, you can take a pre-existing copyright and transfer it under a work for hire arrangement. Well, I would argue, Your Honor, that we have an allegation of certain phrases, expressions, and other creative elements that has never been made particularly clear. And I think that, in a sense, it's an inadequate pleading. Any set of facts standard was abrogated by the Supreme Court in the Twomley case recently, and I think the plaintiff's case rests on the idea that, gee, I've got this several-hundred-page document. And I can allege that something in there is creative and is previously copyrighted and go to trial on that basis. And I think a more specific ‑‑ if one is going to claim a copyright in a written document, one ought to be able to identify it with specificity. I think that ought to be a pleading standard. I have no case to cite to you. Twomley wasn't a copyright case. No, it was not. Yeah. I mean, I think the problem, and you're faced with it, too, but on a 12B6, it's awfully hard to analyze what's really going on here. Well, I think we really don't know, as you say. I mean, I gather you don't know either. What is being claimed as the preexisting work and what isn't? Well, you know, our hands are tied by the record, Your Honor. I did try to include some supplemental materials that attempted to get at that, but an appellant objects to that being considered by the court. I think it's interesting, but probably, you know, it wasn't before that. Additional context, but I think the district court got it right that in the face of Paragraph 11 and nothing more, the plaintiff cannot establish an exclusive right to a copyright, which is jurisdictional under Section 501B. The legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for infringement. So in the face of Paragraph 11, which clearly gives the ownership to Marin County, the court found, well, the plaintiff can't prove that she has a copyright in this, and therefore there's no standing and therefore it is appropriate. It's not true that she can't prove that she has a copyright in the work that was presented to Marin County. That was done by conjunction with other employees and all that. The question is whether she can claim a copyright in the preexisting material. Well, I think that, as I said before, even if she did and even if that were possible, which she, I would say, did not adequately plead. Well, she said it was a copyright infringement in the plaintiff's complaint. An unstoppable claim. But I think it's hard to read Section 201B and come away with the sense that one can preserve a copyright in a work for hire that one brings to the work and fails to disclose and reserve. 201B, unless the parties have expressly agreed otherwise in a written instrument signed by them, everything that the author for hire contributes becomes the property of the hirer. And so I don't think a plaintiff can get around Section 201B on that issue, regardless of what the status of those expressions, phrases, or other creative elements. I'd just also call your court's attention on page 50 of the excerpt. There are two sentences which acknowledge the right of Marin County to, a couple lines down from the top, a presentation of the draft will be made to the Records Management Committee allowing them to discuss issues and make changes. So we're talking about a document that is drafted by committee, as opposed to a document solely authored by the plaintiff. And then in the middle of that page, there's another sentence, of course the drafts would be submitted to the departments where they could be easily edited, and the right to edit that material, the teamwork nature of the way this compilation was prepared for 22 different departments, speaks to the Now we're talking about Fiddler's Copyright Interest as a work to Marin County, right? Not preexisting. Well, if there is something that's preexisting, once it gets massaged through a group editing process, I think in page 18 of our brief I cited to the legislative history and the discussion of these different types of documents dealt with in the Copyright Act, and the reference to a joint work where separate elements merge into a unified whole, where they're subject to edit. In a case like that, they become a joint work, and it would belong to all of the authors except all of the authors are in the employ or working for hire for Marin County, so that it all belongs to Marin County. And I think the case we're talking about that was developed for Marin County, right? Yes. All right. Now, what I'm concerned with is whether the preexisting work is copyrighted and therefore has to be transferred in a particular way. Well, as I say, Your Honor, I think 204A has to be read in conjunction with 201B, and that 201B is much more specific. 204A is a general statement that to transfer it you have to have a writing signed by both parties. 201B says in a work made for hire, if the author is going to reserve anything, well, unless the author reserves something, it all belongs to the hirer who becomes the author. So I think you have to read 204 and the requirement that a transfer be in writing as qualified by 201B, which speaks specifically to that issue in the case of a work for hire, which is what we have today. And then 103B sheds further light on that by indicating that in a compilation, the copyright only extends to the material contributed by the author. So I think the practical reading of these statutes is if an author has a preexisting copyrighted material and is going to create a compilation and is going to include that in it, the author needs to reserve the right to that previously copyrighted material in the written document that creates the work for hire. As I understand the legal difference once we boil down everything else, and there are a lot of issues, is this. Let's assume, hypothetically, because it makes it a little bit easier for me to get my head around. Let's say you have a playwright who has constructed an act and takes a copyright interest in an act, and then someone commissions the playwright to say, well, I'd like you to produce something for us, well, use that act as part of it. So the resulting is a three-act compilation that's produced, and you have language like paragraph 11 that says part of it. Your position would be unless the document reserves the copyright into the act that was previously copyrighted, the screenwriter or the playwright loses it. Their position would be unless you specifically transfer the copyright, it stays to the one act. It stays with the artist. Is that where we are legally on one of the major issues? I see my time has expired, but just to answer that, I think we're almost there, except that throw in the fact that that original act gets edited by the... That's semi-hypothetical. You don't get to edit my hypothetical. That's the case we have here, that prior act did get edited, and so becomes part of the new whole. And I think, again, all I can do is refer you back to that handful of sections in the Copyright Act, which I think if read together does, in fact, speak to this specific issue and speaks to your hypothetical and says, yes, you should reserve your copyright to that part that you're going to compile in. Another practical aspect, though I don't think a lot, is would it have been the intent of this person to have transferred that copyrighted material and thus undo her whole myth of business? She couldn't use it for other plans and so forth. Well, the practical answer to that, Your Honor, is that Marin County regards all of the content of it to be uncopyrightable facts, and therefore, as a practical matter, does not object to Mrs. Gladwell continuing to conduct her business, which is not in the record, but I believe she's fully capable of doing. And Marin County affirms here that it does not object to Mrs. Gladwell using all of the material that appears in Marin's record, does not object to Tuolumne or any other county using them. So I don't think as a practical matter it will put her out of business. She's talking about using her particular preexisting copyrighted material to serve other clients, not the Marin County. It's not Marin's county position to object to that. They have not objected to it. They do not intend to object to it. You're not trying to make money off this, are you? Pardon me? Marin County is not trying to make money off this. No, they're not, Your Honor. They're trying to make good use of what they purchased. So I guess the question, and this has nothing to do with what we're going to have to decide, because there are interesting issues of copyright and contract law. But it seems to me that, I mean, are you in a position to talk settlement about this case? Because a lot of it seems to be a dispute about intent on perhaps specifics that could be resolved through negotiation rather than this. And you don't have to tell me. You can just say yes or no, whether you think it's settlable or you've gone past that point. I think, Your Honor, there's been ample opportunity to explore the differences. Okay. I accept your answer. And don't worry, it won't reflect one way or the other. But when we see sometimes at argument that the differences might be solvable, I think we have an obligation just to ask and see whether that's possible. Thank you. We submit it. Thank you. Butler. Thank you, Your Honors. I wanted to address two points. First, in reverse order, Judge Hugg, I think maybe an even more direct question is, would Diane Gladwell have intended for Marin to share her products with her clients? She only has so many counties in California, and then have it posted on the Secretary of State website for free. That also kind of responds to the question about solvability. She would not have intended for it to be shared for free with all of her clients. She can't do business if they get the milk for free. There is a provision in Section 11, as it can be. I don't have it right now in front of me. But for public use, something about that. Well, it does seem to contemplate that Marin is going to do something with this document. For public inspection. Well, there is a point in Section 11 that says Marin will open it up for public inspection. What we would make very clear on the record, if I had the opportunity to expand the record and provide evidence, what Marin does with this is they have a record retention schedule, and they provide it to each of their departments. They can have meetings and talk about it. They can have a Board of Supervisors meeting where they officially say we formally adopt it. But it's never contemplated that they're literally going to take the document or the electronic form, for example, and give it to other counties and say, use it. And take all of it. It's available for public inspection. It's pretty broad. Well, but what is intended by that language? It's ambiguous, and the intent is very clear. And I could make it very clear with witnesses. That's part of the problem of this being ruled on a 12b-6. I would love to be more expansive about what exactly is copyrightable and about what this contract really meant. I haven't yet had the opportunity. I don't think we can make assumptions about what it means. Well, is intent relevant in the current context, though, because basically both of you are making a legal argument about what needs to be included in the contract to preserve copyright rights, right? Is that the threshold that we have to get over first? If you're asking me what you asked counsel about, are we at a legal issue about what exactly how the interplay between 103b and 201? Yeah, and what you need to do, if we resolve that issue, then what you need to include in a contract to preserve preexisting copyright rights. Okay. Well, the answer is very clear from these statutes, and the answer is the opposite of Maureen's position here this morning. Under 103b, if you are the author of a derivative work or compilation, the copyright you own only extends to your original contributions, not to preexisting materials. If you, as a work-for-hire hiring party, own a compilation or a derivative work, you are deemed the author of it. Your copyright, again, is no more expansive than if you authored it yourself. You only get the new material, the new contribution. But under your interpretation, it defeats the express language in paragraph 11 because the ownership right that you would assert in that instance would forbid the county from making this document available for public inspection. No, the county clearly has that right here to make it available for public inspection. Not under your theory because it includes copyrightable material, and therefore any disclosure to the public would be a breach of your client's copyright in the preexisting materials. Your Honor, with all due respect, whenever you have a copyright, you're free to, in a contract, give pieces of it, give one stick out of that bundle, and this is what they did. But your position has to be that the county of Maureen could not have posted on the Web of its own duration. Forget about Secretary of State. It could not have made that document available to the public and to Maureen County citizens so that they could see what the records retention schedule is. So what ownership right was transferred under paragraph 11 under your interpretation of the language? Public inspection does not mean what you're assuming it means. The ownership right that was transferred is they're allowed to use it internally. They're allowed to make it available for public inspection. So, for example, if I'm a Maureen County citizen and I make a Public Records Act request, I can receive a copy of this document. They can make it available to me. They're required under law. But what they're required to do is keep a footer that indicates there's a copyrightable material present in that document so that that citizen knows I can't use it, I can't make derivative works from it, et cetera, I can't resell it. That's the distinction. So they could post it on the bulletin board at the Maureen County Civic Center? That would be okay? You're starting to get to an area where I think the parties clearly did not intend that, and that's outside the record. I'm having a hard time buying your definition of public inspection, because your definition doesn't comport with what I understand the dictionary definition to be of public and inspection. Well, public inspection, to go right directly to the heart of it, is not public use. I get it. Your position is you can publicly inspect a work by Dickens, but once you start copying, then, yeah. Okay. I understand your answer. The only other point I wanted to make is Counsel for Maureen started to point to areas of the contract in the record and say, well, see here, the preexisting materials were massaged into the work, edited, there was a team effort. We have to be very careful about the contract. The contract was referred to in the complaint. The contract wording is properly before this court because the parties signed on to that. They agreed and they signed to it. But to say that it then speaks to the truth of what actually occurred, you're making a leap and it's also an admissible hearsay. This work for hire, if we look at the excerpt of record 50, appears to contemplate more than simply hiring a painter, as in Dumas, to paint the paintings. It does contemplate sort of a team process by which material would be edited and changed. So it's not like hiring a photographer or a painter or an author of a book to write a book that is then published by the owner. And there is law with respect to Hemingway's editor. How much of a contribution is it before you're a joint author? That's valid. And once we get there and figure out who contributed what, we can intelligently respond to that sort of thing. How about 201B that was mentioned by the other side? And will we have a situation that the author of the pre-existing material is herself contributing this to the ultimate product of the county? Under 201B, the work for hire author, the copyright of that is only in their contributions to that derivative work, if you will, or that compilation. You don't get more just because you're hiring somebody else to do it than you would get if you did it yourself. Who's burden is it to preserve it or not? Let me go in reverse. If it was, in fact, a work for hire, which it's not, and that was established, then the burden would be on the creator, not the hiring party. It's not a work for hire. Therefore, you look at each stick in that bundle and say what got transferred, and that means the burden is on the non-creator. So this contract with Morin does not involve work for hire? The contract with Morin does not involve work for hire. In any respect? Even if it did, it does not square. The language is much less narrow than the language of each work for hire case. But for purposes of where we are today, even if it was work for hire, you don't get to own and take preexisting material that predates the hiring. That's clear in the Schiller case from the Seventh Circuit. I'm not sure I understood your first answer, which is it does not involve a work for hire. That's hard for me to see. Work for hire is very specific with respect to the intent of the parties. In every case that has found work for hire, there's been a few factors that have been consistent. The hiring party was a publisher. So the parties intended that the hiring party needed all these rights to continue to resell the map or the photographs or the mail order catalog or whatever it was. That's reversed in this case. Gladwell is the one who the parties all knew needed to own copyrights to continue her business. Secondly, in each of the cases in which work for hire was found, they used words like sole property. They said that the creator could not use or publish for any purpose much broader than what we've got, which is the creator can't publish. And I think there's another example of how it was just kind of expansive and very clear that under no circumstances does the creating party own any intellectual property after this point, after they sign this agreement. And that's not the case here. This would be unprecedented if this was ruled a work for hire. There is literally no precedent for a work for hire with this sort of language. All right, counsel. Thank you for your argument. Interesting case, and it will be submitted. We'll proceed to the next case on the oral argument calendar this morning. Carrasco versus San Ramon Valley United Unified School District.
judges: Hug, Thomas, Tallman